Turney, J.,
delivered the opinion of the Court.
J. B. Clay was a commission and factorage merchant in Memphis. As such he received from various planters, to be sold, cotton, which he shipped in his own name to Levering & Co., St. Louis, who sold the same. J. B. Clay died, leaving in the hands of Levering & Co., balances on cotton sales, the sum of $18,073.34. H. A. Partee became the administrator upon the.estate of Clay, and received from Levering & Co. the amount above, and paid it out (less about $1,300, the commissions perhaps of Clay) to the parties, according to the amounts due them respectively for their cotton. This was proper. Levering & Co. were the debtors to the planters as owners of the cotton, and not in fact to Clay — and while a payment to Clay would ordinarily have discharged the debt to each — yet the cotton owners might in suits at law have recovered to each the balance due for his cotton; or by proceeding in chancery have prevented a payment *298 to Clay. Clay was merely the factor of the owners, intrusted with the possession and sale of the goods authorized to handle and sell in his own name, but. in this there was no such vestiture of title to them or the price, as to authorize him to collect against the will of the owners.
His death was a revocation of his agency. His. administrator in receiving the fund from Levering &. Co., received it not as administrator, but by the act of collection made himself agent for the planters — and while this payment to him exonerated Levering & Co. from liability to the true owners, it did so, because-they had permitted him to transmit and direct as if the cotton were his.
If they had been notified of the true ownership and afterward pajd to Clay or his administrator, against instructions, it would have been at their risk. They were debtors to, and not trustees for the owners, after the sale.
In Pennington v. Bell, 4 Sneed, 200, Judge Caruthers says: “ The general rule is clear, that the. separate creditors are entitled to priority out of the private effects of the debtor, and the joint .creditors out of the effects of the firm of which the common debtor is a member.”
It is, insisted in argument, that the question is a dictum — that the question did not arise in the case. We think the question did arise and was properly settled. But be that so or not, the language is the announcement of a correct 'principle.
Chancellor Kent says: “ The joint creditors have *299 tbe primary claim upon the joint fund in the distribution of the assets of bankrupt or insolvent partners, and the partnership debts are to be settled before any division of the funds takes place. So far as the partnership property has been acquired by • means of partnership debts, those debts have in equity a priority of claim to be discharged; and the separate creditors are only entitled in equity to seek payment from the surplus of the joint fund after satisfaction of the joint debts.
“The equity of the rule on the other hand, equally requires that the joint creditors should only look to the surplus of the separate estates of the partners after payment of the separate debts. It was a principle of the Eoman law, and it has been acknowledged in-the equity jurisprudence of Spain, England and the-United States, that partnership debts must be paid out of the partnership estate, and private and separate debts, out of the private and separate estate of the-individual partners. If the partnership creditors can not obtain payment out of the parnership estate, they can not in equity resort to the private and separate estate until private and separate creditors are satisfied. * * ‡ ‡ ‡ ‡ * *
“The basis of the general rule is, that the funds are to be liable on which the credit was given. In contracts with the partnership, the credit is supposed to be given to the firm, but those who deal with an individual member, rely on his sufficiency:” 3 Kent, top p. 76; margin, 65.
We have made this full extract, because it gives *300 the true rule and its .reason distinctly, accurately and forcibly, preferring it to any of the many comparatively recent decisions for and against, to which we have been referred.
Wild legislation prevails almost as an epidemic: new treatises, reports, periodicals and law magazines, are produced aud thrown upon the country as if by magic; their indiscriminate use by the courts and profession induces the danger which has perhaps in some instances already resulted, of incorporating into and diluting our jurisprudence with the construction of local laws of sister States, which are foreign to our statutes and institutions. Now, more than at any other period, is it important that we adhere to the old landmarks of the law. We may be certain we have done this, when we have relied upon the standard text books and the old reports. In them is found the rule for every case.
Our statute upon the subject of joint and several liabilities is a regulation of pleading .and jurisdiction, and does not alter or change the general rule we have announced.
The decree is conceded to be erroneous as to the gold note. The judgment in favor of Owen was properly allowed.
The decree of the Chancellor does not charge the estate of Clay with the payment of partnership debts before or in even time with his individual debts.
After the modifications indicated, the decree is affirmed, and the cause remanded for a re-statement of the account, and further proceedings.